# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN

       Plaintiff,

v.

JUDICIAL WATCH, INC.

       Defendant.

Civil No. 1:16-mc-01430-UNA

## MOTION TO STAY EXECUTION OF JUDGMENT

Defendant Judicial Watch, Inc. ("Judicial Watch"), by undersigned counsel, hereby moves to stay the execution of the June 11, 2014, Final Judgement. As grounds for this Motion, Defendant Judicial Watch states as follows:

1.      The Court should stay execution of the Final Judgment for multiple reasons: (a) more than one party claims an interest in the Final Judgment; (b) Payment to Klayman will expose Judicial Watch to a risk of liability for non-payment to another party; (c) Judicial Watch is subject to an injunction prohibiting payment to Klayman in a separate state court action; (d) Judicial Watch has already paid the Final Judgment into the court registry for the U.S. District Court for the Southern District of Florida; and (e) The U.S. District Court for the Southern District of Florida denied Klayman's request for payment of the Final Judgment, which issue is currently on appeal to the U.S. Court of Appeals for the Eleventh Circuit.

## Background Facts

2.      On June 11, 2014, a Final Judgment was entered in the U.S. District Court for the Southern District of Florida in favor of Larry Klayman ("Klayman's") in the amount of $181,000. [Docket No. 1-1]

3.     On June 23, 2014, counsel for Klayman's former spouse, Stephanie Ann Luck ("Luck"), faxed to Judicial Watch a copy of a Creditor's Bill filed against Klayman in the Cuyahoga County, Ohio, Court of Common Pleas, seeking to have Judicial Watch pay the judgment to her to satisfy a $325,000 judgment entered by the Cuyahoga County Domestic Relations Court against Klayman in the case styled as *Luck v. Klayman*, Case No.: CV14-828766 (the "Spousal Support Case"). The Creditor's Bill named Klayman and Judicial Watch as defendants. A copy of the Creditor's Bill is attached hereto as Exhibit A.

4.     Recognizing a genuine dispute as to entitlement to the Final Judgment payment, Judicial Watch filed an Unopposed Motion to Deposit payment into the Court's Registry, which was then granted on February 18, 2015. A copy of the Order is attached hereto as Exhibit B. Judicial Watch promptly paid the judgment amount into the Court Registry on February 19, 2015. A copy of the Payment Receipt is attached hereto as Exhibit C.

5.     On May 6, 2015, Klayman filed a Renewed Motion for Withdrawal of a Deposit asserting a number of arguments supporting his entitlement to the funds over Luck's interest. By Order dated May 8, 2015, the District Court denied the Motion to release funds to Klayman, vacated its earlier Order permitting payment of the funds into the court's registry, and directed that the $181,000 be returned to Judicial Watch, noting that multiple interests in the funds entitled Judicial Watch to file an interpleader action, which should not be handled post-judgment in a concluded case. In particular, the Court noted that the dispute over the funds "may involve protracted proceedings and new claims and defenses by a new party having nothing to do with the underlying and long-concluded action." A copy of the May 8, 2015, Order is attached hereto as Exhibit D.

6.      On May 12, 2015, Klayman filed his Notice of Appeal challenging the District Court's discretion to deny release of the funds.  A copy of the Notice of Appeal is attached hereto as Exhibit E.

7.      On August 18, 2015, Luck filed a Motion to Reenter Judgment in the Child Support Case. On September 14, 2015, the Court of Common Pleas (Cuyyahoga County, Ohio) granted the Motion  and amended its July 22, 2015, Journal Entry by, in relevant part, enjoining Judicial Watch "from paying any of the $181,000 to Defendant Klayman". A copy of the September 14, 2015, Journal Entry is attached hereto as Exhibit F.

8.      On May 27, 2016, the U.S. Court of Appeals for the Eleventh Circuit denied Klayman's appeals.  A copy of the unpublished opinion is attached as Exhibit G. On June 17, 2016, Klayman filed a Petition for Rehearing *En Banc*, a copy of which is attached hereto as Exhibit H.

## ARGUMENT

9.      A trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n. 6, 118 S.Ct. 1761, 140 L.Ed.2d 1070 (1998) (quoting Landis, 299 U.S. at 254–55, 57 S.Ct. 163). Indeed, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir.1979).

10.     Klayman is not entitled to collect the Final Judgment until the conflicting interests in the funds are finally adjudicated. The U.S. District Court for the Southern District of Florida expressly found that multiple parties have an interest in the judgment amount such that an interpleader was the more appropriate vehicle to resolve the claims. *See Hollister v. Soetoro,* 258 F.R.D. 1, 3 (D.D.C.2009) ("prerequisite for interpleader is that the party requesting interpleader demonstrate that he has been or may be subjected to adverse claims"). Indeed, the Court of Common Pleas in Ohio recognized Luck's interest and enjoined Judicial Watch from making payment to Klayman. Thus, Klayman's registration of the Final Judgment in this Court is improper because it attempts to avoid the injunction entered against Judicial Watch and attempts to circumvent the Florida District Court's determination that an interpleader action is the appropriate method for determining the rights of Luck and Klayman to the Final Judgment proceeds.

11.     Additional circumstances militate against permitting collection at this time, including that Judicial Watch already paid the Final Judgment into the court registry of the U.S. District Court for the Southern District of Florida, which denied release of the funds to Klayman. That decision is pending *en banc* review by the Eleventh Circuit, which already once affirmed the lower court's determination that Klayman was not entitled to release of the funds**. [CITE APPEAL]** Perhaps realizing that relief will not be afforded in that court, Klayman is now engaged in forum shopping to avoid the negative decision.

12.     Judicial Watch requests that this Court stay all collection proceedings until the rights of Klayman, Luck and any other parties to a disbursement from the judgment can be finally determined. Judicial Watch has demonstrated its good faith by paying $181,000 into the registry for the U.S. District Court for the Southern District of Florida. At a minimum, any

collection effort should be postponed until those funds are returned to Judicial Watch, or interests in them are determined. If not, Judicial Watch may be subject to paying the Final Judgment more than once.

13.     Judicial Watch's payment of the judgment into the Court Registry is at least equal to, if not more reliable than a supersedeas bond. By payment into the Registry, the Final Judgement has been "satisfied".  Fed.R.Civ.P. 60(b)(5).  Therefore, Judicial Watch is entitled to relief therefrom and Klayman must be stayed from taking any collection action while such funds remain in the U.S. District Court for the Southern District of Florida.

14.     Klayman is well aware of Luck's interest in the judgment and is attempting to secret the judgment payment away from her. Permitting the writ to proceed will place a judicial imprimatur on Klayman's attempt to avoid Luck's interest in the proceeds of the Final Judgment.

WHEREFORE, for all of the foregoing reasons, Judicial Watch respectfully requests that the Court grant this Motion and stay the Writ of Execution for the Final Judgment pending final determination of all claimants' rights to the funds.

Dated: July 29, 2016                    Respectfully submitted,

                                        /s/
                                        _____
                                        Richard W. Driscoll (436471)
                                        DRISCOLL & SELTZER, PLLC
                                        300 N. Washington St., Suite 610
                                        Alexandria, Virginia 22314
                                        703.822.5001 Telephone
                                        703.997.4892 Facsimile
                                        Email: rdriscoll@driscollseltzer.com

                                        *Counsel for Defendant Judicial Watch, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 29th day of July 2016, a copy of the foregoing Motion was served by electronic filing upon counsel listed on the Notice of Electronic Filing, and by first class mail, postage prepaid to:

Larry E. Klayman
Klayman Law Firm
2020 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
leklayman@gmail.com


/s/
_____

Richard W. Driscoll

# EXHIBIT A

## FAX COVER PAGE

# WELTMAN, WEINBERG & REIS Co., LPA

Robert B. Weltman, Esq.

323 Lakeside Avenue, Suite 200  |  Cleveland, OH 44113  |  phone 216 685 1040  |  fax 216 363 6914  |  dmausar@weltman.com  |  www.weltman.com

Date:  June 23, 2014

To: Judicial Watch, Inc.

From: ROBERT B. WELTMAN

Fax Number: 202-646-5199

Phone Number: 216.685.1040

Total Pages Including Cover:  24 pages

Comments:  Stephanie Ann Luck v. Larry Elliot Klayman, Case No. 828766
Cuyahoga County Common Pleas Court

## Confidentiality Notice

The documents accompanying this telecopy transmission contain confidential information belonging to the sender which is legally privileged. This information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone to arrange for return of the original documents to us.

## WELTMAN, WEINBERG & REIS Co., LPA

ATTORNEYS AT LAW

*80 Years of Service.*

Brooklyn Hts  216 739 5100
Chicago  312 782 9676
Cincinnati  513 723 2200
Cleveland  216 685 1000
Columbus  614 228 7272

### Robert B. Weltman

*Senior Partner*

323 Lakeside Avenue, Suite 200 Cleveland, OH 44113
216 685 1040 phone | 216 363 6914 fax
rweltman@weltman.com
weltman.com

Detroit  248 362 6100
Ft. Lauderdale  954 740 5200
Grove City  614 801 2600
Philadelphia  215 599 1500
Pittsburgh  412 434 7955

June 23, 2014

**VIA FAX – (202) 646-5799**
**AND REGULAR MAIL**

Judicial Watch, Inc.
425 Third St., SW
Washington, DC 20024

    Re:   *Stephanie Ann Luck vs. Larry Elliot Klayman*
        *Cuyahoga County Common Pleas Court, Case No. 828766*
        *Our File No. 20422322*

Gentlemen:

    Enclosed please find a copy of a Creditor's Bill which was filed with the Cuyahoga County Common Pleas Court today. As you will note, you have been named in the equitable proceedings to the extent that you are holding funds which are due the Defendant, Larry Elliot Klayman as a result of the verdict against Judicial Watch, Inc. in the United States District Court, Southern District of Florida, Case No. 13-20610-CIV-Altonaga.

    As of the date of service of the Creditor's Bill, it is incumbent upon you to hold said funds pending further order of the Cuyahoga County Common Pleas Court. If you have any questions or concerns with regard to these matters, please refer to the appropriate case law and the following cases: *Federal Deposit Ins. Corp. v. Willoughby* (1984), 19 Ohio App. 3d 51; *Gaib v. Gaib* (1983) 14 Ohio App. 3d 97; *Bank One, Cleveland NA v. Lincoln Electric Co.* (1990) 55 Ohio Misc. 2d 7.

    If after reviewing the governing case law, you have any questions or concerns, please do not hesitate to contact me personally at rweltman@weltman.com and/or 216-685-1040.

    <u>This communication is from a debt collector attempting to collect this debt for the current creditor and any information obtained will be used for that purpose.</u>

                Sincerely,

                Robert B. Weltman

RBW/tmj
Enclosure
cc: Larry Elliot Klayman – 6538 Collins Avenue, #331, Miami Beach, FL 33141
    Larry Elliot Klayman – 2020 Pennsylvania, NW #345, Washington, DC 20006
    Larry Elliot Klayman – 2520 Coral Way, #2027, Miami, FL 33145

JUN-23-2014  16:10        WELTMAN WEINBERG REIS

#20422322

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

STEPHANIE ANN LUCK                    )      CASE NO. CU148287606
2598 KERWICK RD.                      )
CLEVELAND, OH 44118                   )      JUDGE Brian J. Corrigan
                                      )
                                      )
vs.                                   )
                                      )
LARRY ELLIOT KLAYMAN                  )
6538 COLLINS AVE, STE. 331            )
MIAMI BEACH, FL 33141                 )
                                      )
Also serve:                           )      **CREDITOR'S BILL**
                                      )
        LARRY ELLIOT KLAYMAN          )
        2020 PENNSYLVANIA AVE, NW     )
        SUITE 345                     )
        WASHINGTON, DC 20006          )
                                      )
Also serve:                           )
                                      )
        LARRY ELLIOT KLAYMAN          )
        2520 CORAL WAY                )
        SUITE 2027                    )
        MIAMI, FL 33145               )
                                      )
                                      )
                                      )
JUDICIAL WATCH, INC.                  )
425 THIRD ST SW                       )
WASHINGTON, DC 20024                  )

## JURISDICTION

1. This Court possesses personal and subject matter jurisdiction.

2. The unsatisfied Judgment which is the subject matter of the within Creditor's Bill was originally rendered on behalf of the Plaintiff, Stephanie Ann Luck, (hereinafter referred to as "Plaintiff") against the Defendant, Larry Elliot Klayman, (hereinafter referred to as "Klayman") as part of Cuyahoga County Common Pleas Court, Domestic Relations Division, Case #DR 07-316840, and for which this Court has jurisdiction to enforce the Cuyahoga County Domestic Relations Court's judgment.

3. Defendant, Judicial Watch, Inc., as a garnishee in these proceedings, is a non-profit organization that has utilized the Ohio court system to further the interests of registered voters in Ohio. Judicial Watch Inc. has had a sufficient amount of minimum contacts in order to be subject to this Court's jurisdiction. In addition to utilizing Ohio's courts, Judicial Watch Inc. requests and receives donations from Ohio Residents thereby being subject to jurisdiction of this Court. A copy of one of the Court actions filed by Judicial Watch Inc. on behalf of Ohio's voters is attached hereto and incorporated herein by reference as Exhibit 1.

## THE JUDGMENT

4. Plaintiff reincorporates all of the allegations previously set forth in Paragraphs 1-3 herein and further states as follows:

5. On June 24, 2011 in case #DR07-316840 of the Cuyahoga County Common Pleas Court captioned *"Larry Elliot Klayman v. Stephanie Ann Luck"* the Court adopted the Magistrate's Decision filed July 2, 2010 in its entirety and awarded attorney fees in the amount of $325,000, with statutory interest accruing from the Date of Judgment, in favor of the Plaintiff in these proceedings and against Defendant, Klayman, for which Judgment was rendered and

execution may issue thereon.  A copy of the Judgment Entry is attached hereto and labeled Exhibit 2.

6. The Judgment was affirmed by the Court of Appeals of Ohio, Eighth Appellate District, Cuyahoga County on July 30, 2012 and the aforementioned Judgment remains unsatisfied; the balance due and owing on said Judgment $325,000 with interest accruing at the statutory rate from the Date of Judgment. The Judgment continues to accrue interest and court costs as expended.

7. The Defendant, Klayman, has no real or personal property sufficient to satisfy said Judgment.

### THIRD-PARTY PROCEEDINGS AND PLAINTIFF'S CREDITOR'S BILL

8. Plaintiff reincorporates and realleges all of the foregoing as set forth in Paragraphs 1-7 herein and further states as follows:

9. The Defendant, Klayman, filed a lawsuit against the Defendant, Judicial Watch, Inc., in the United States District Court, Southern District of Florida, Case No. 13-20610-CIV-Altonaga, alleging certain and specific damages.

10. The Defendant, Klayman, was awarded a Judgment against the Defendant, Judicial Watch, Inc., in the amount of $181,000, on June 11, 2014 in the proceedings described in Paragraph 9 above.  As a result, there will be, or is, money due and owing by the Defendant, Judicial Watch, Inc., to the Defendant, Klayman, through Judgment, settlement, execution, payment or otherwise. A copy of the Judgment Entry and Verdict Form are attached hereto and labeled Exhibits 3 and 4, respectively.

JUN-23-2014  16:11        WELTMAN WEINBERG REIS

11. The Defendant, Judicial Watch, Inc., as a garnishee, should be ordered to pay over any money due and owing to Defendant, Klayman, to the Plaintiff in these proceedings and at the time Defendant, Klayman, is entitled to receive the funds due on the Judgment rendered against Judicial Watch Inc., and since Defendant, Klayman, has no other real or personal property sufficient to satisfy Plaintiff's outstanding Judgment set forth above in paragraphs 5 & 6.

12. Plaintiff further states that the Defendant, Judicial Watch, Inc., should be enjoined from paying to the Defendant, Klayman, any of the above-mentioned monies, assets, effects and interests and that the Defendant, Klayman, be enjoined from receiving any of the above-mentioned monies, assets, effects and interests so that the proceeds can be applied to Plaintiff's Judgment for Plaintiff is without adequate remedy at law and without remedy save by the interposition of the equitable powers of this Court.

WHEREFORE, Plaintiff prays that the Defendant, Judicial Watch, Inc., as a garnishee, be enjoined from paying or delivering to the Defendant, Klayman, and that Defendant Klayman. be enjoined from receiving any monies, assets, effects and interests due and owing from the Defendant, Judicial Watch, Inc. on the outstanding Judgment set forth in paragraph 10, so that the funds due on the Judgment against Judicial Watch Inc. can be applied to Plaintiff's Judgment against Larry Klayman, interest accrued and costs as set forth herein.

Plaintiff further prays that a proper Order be made by this Court to direct the Defendant, Judicial Watch, Inc., as a garnishee, to pay and apply upon Plaintiff's Judgment against Larry Klayman, directly all monies, assets, effects and interests due and to become due and payable to Defendant, Klayman, as may be necessary to fully satisfy such Judgment, and for such other and

further relief as may be necessary to fully satisfy such Judgment, or for other such relief as may

be necessary and proper at law or equity, as well as its costs herein.

WELTMAN, WEINBERG & REIS CO., L.P.A.

ROBERT B. WELTMAN #0008230
Attorney for Plaintiff
Lakeside Place, Suite 200
323 Lakeside Avenue, West
Cleveland, OH  44113
Telephone: (216) 685-1040
Facsimile: (216) 363-6914
Email: rweltman@weltman.com

JUN-23-2014  16:11        WELTMAN WEINBERG REIS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| JUDICIAL WATCH, INC., on behalf of certain of its members; and TRUE THE VOTE, in its corporate capacity, | : : : : Case No.: 2:12-cv-792 : |
| Plaintiffs, | : : |
| vs. | : : |
| OHIO SECRETARY OF STATE JON HUSTED, in his official capacity, | : : : |
| Defendant. | : |

## COMPLAINT

Plaintiffs Judicial Watch, Inc. and True the Vote, by their attorneys, bring this action for declaratory and injunctive relief and allege as follows:

### INTRODUCTION

1.      Plaintiffs Judicial Watch, Inc. and True the Vote seek declaratory and injunctive relief to compel the State of Ohio to comply with its voter list maintenance obligations under Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg-6.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the action arises under the laws of the United States, and under 42 U.S.C. § 1973gg-9(b)(2), as the action seeks injunctive and declaratory relief under the NVRA.

**EXHIBIT 1**

JUN-23-2014  16:12        WELTMAN WEINBERG REIS

3.     Venue in this Court is proper under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

4.     Plaintiff Judicial Watch, Inc. ("Judicial Watch") is a non-profit organization that seeks to promote integrity, transparency, and accountability in government and fidelity to the rule of law.  Judicial Watch brings this action on behalf of its members who are registered to vote in the State of Ohio.

5.     Plaintiff True the Vote ("True the Vote") is a non-profit organization that seeks to restore truth, faith, and integrity to local, state, and federal elections.  True the Vote brings this action in its corporate capacity.

6.     Defendant Jon Husted is the Secretary of State of the State of Ohio ("the Secretary") and has served in this capacity since January 9, 2011.  Because the State of Ohio has designated the Secretary as the "chief State election official" responsible for coordination of its responsibilities under the NVRA (*see* 42 U.S.C. § 1973gg-8, Plaintiffs Judicial Watch, Inc. and True the Vote bring this action against the Secretary in his official capacity.

## FACTUAL BACKGROUND

7.     Section 8 of the NVRA requires that "[i]n the administration of voter registration for elections for Federal office, each State shall ... conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of – (A) the death of the registrant; or (B) a change in the residence of the registrant ... " 42 U.S.C. § 1973gg-6(a)(4).  Section 8 of the NVRA also mandates that any such voter list maintenance programs or activities "shall be uniform, nondiscriminatory, and in compliance with

2

the Voting Rights Act of 1965 (42 U.S.C. § 1973 *et seq.*)," among other important protections. 42 U.S.C. § 1973gg-6(b)(1).

8.　　Section 8 of the NVRA also requires that "[e]ach State shall maintain for at least 2 years and shall make available for public inspection ... all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters. ..." 42 U.S.C. § 1973gg-6(i).

9.　　The most recent and reliable, publicly-available data regarding voting age population and voting registration, by county, for the State of Ohio is the 2010 Decennial U.S. Census ("2010 U.S. Census"), released by the U.S. Government beginning in February of 2011, and the voter registration data provided by the State of Ohio to the U.S. Election Assistance Commission ("EAC Report") for the general election held in November of 2010, published on June 30, 2011. The 2010 U.S. Census contains data on voting age population in 2010, by county, for the State of Ohio. The EAC report contains data on the number of persons on the voter registration rolls in 2010, by county, in the State of Ohio.

10.　　Based on an examination of the data in the 2010 U.S. Census and the EAC Report, the number of individuals listed on voter registration rolls in the following three counties in the State of Ohio exceeds 100% of the total voting age population in these counties: Auglaize, Wood, and Morrow. (And in both Auglaize and Wood, the voter registration rolls exceed 105% of total voting age population.) This data demonstrating the discrepancy in voter registration rolls to total voting age population in each of these counties constitutes *prima facie* evidence that the State of Ohio has failed to comply with its voter list maintenance obligations under Section 8 of the NVRA.

11.     The data in the 2010 U.S. Census and the EAC Report also shows that the following thirty-one counties in the State of Ohio (in order of highest to lowest percentage) have voter registration rolls that contain between 90% and 100% of total voting age population: Lawrence, Cuyahoga, Henry, Medina, Mahoning, Delaware, Putnam, Hancock, Fairfield, Geauga, Van Wert, Lucas, Montgomery, Jackson, Ottawa, Stark, Hamilton, Miami, Franklin, Gallia, Greene, Jefferson, Trumbull, Lorain, Wyandot, Athens, Harrison, Clermont, Licking, Logan, and Erie Counties. This data further demonstrates that the State of Ohio has failed to satisfy its voter list maintenance obligations under Section 8 of the NVRA.

12.     According to the U.S. Census Bureau, the average rate of voter registration to total voting age population during the presidential election year of 2008 was 71%, yet in Ohio, 34 of its 88 counties have a rate that exceeds 90%.

13.     The failure of the State of Ohio to satisfy its voter list maintenance obligations is contributing to a larger, nationwide problem. According to a February 2012 study published by the non-partisan Pew Center for the States entitled "Inaccurate, Costly, and Inefficient," inaccurate voter registration lists are rampant across the United States. The Pew study found that approximately 24 million active voter registrations throughout the United States—or one out of every eight registrations—are either no longer valid or are significantly inaccurate. The Pew study also found that more than 1.8 million deceased individuals are listed as active voters nationwide, and that approximately 2.75 million people have active registrations in more than one state.

14.     On February 6, 2012, Judicial Watch sent a letter to the Secretary notifying him that the State of Ohio was in violation of Section 8 of the NVRA and that, as the chief State election official in the State of Ohio, he is responsible for compliance with Section 8 of the

4

NVRA. The letter explained that, according to 2010 U.S. Census data and publicly available voter registration data, the number of individuals registered to vote in three counties in the State of Ohio exceeds those counties' total voting age population. The letter identified each of the three counties by name and informed the Secretary that a lawsuit may be brought against him if the State of Ohio did not comply with its voter list maintenance obligations under Section 8 of the NVRA.

15.     The letter also requested that the Secretary make available for public inspection all records concerning "the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency" of official lists of eligible voters in the State of Ohio during the past two years, explaining that Section 8 of the NVRA required such records to be made available.

16.     The Secretary, through his Chief Legal Counsel, responded in writing to Judicial Watch's letter on March 2, 2012, stating "We share your concerns about the accuracy of our voting lists" and identifying a Directive, issued on April 18, 2011, instructing the county boards of elections on procedures for conducting programs to remove ineligible voters from the voter rolls due to changes in a registrant's residence. The Secretary's letter did not identify any efforts by the State of Ohio to ensure that the county boards of election were following the procedures described in the nearly one-year old directive. Nor did it identify any other programs or activities undertaken by the State of Ohio to remove ineligible voters from the voter rolls due to changes in a registrant's residence. A copy of the Directive was included with the letter.

17.     The Secretary's letter also did not identify any programs and activities undertaken by the State of Ohio to remove ineligible voters from the voter rolls due to the death of the registrant, or any efforts to instruct county boards of election on procedures for removing

deceased registrants from the voter rolls. Nor did it identify any other voter list maintenance programs or activities undertaken by the State of Ohio.

18.     In the letter, the Secretary asserted that the State of Ohio's efforts to maintain accurate voter rolls "have been hampered ... by the restrictions and seemingly inconsistent provisions of the NVRA" and noted that he had written a letter to U.S. Attorney General Eric Holder "to discuss possible solutions," but had not received a response.

19.     The only other document produced by the Secretary with his letter was a copy of the letter he had sent to Attorney General Holder, dated February 10, 2012. In this letter to Attorney General Holder, the Secretary admitted that the State of Ohio has not fulfilled its duty under Section 8 of the NVRA to make a reasonable effort to remove ineligible voters from its voter rolls. The letter from the Secretary also acknowledged that the voter rolls for two counties in the State of Ohio contained more registered voters than the total voting age population in those counties.

20.     As of the date of this Complaint, no further response from the Secretary or his office has been received by the Plaintiffs. Nor has the Secretary produced any additional documents regarding any other voter list maintenance programs or activities undertaken by the State of Ohio.

21.     In light of the Secretary's letter and the lack of any further response from the Secretary, any further efforts to secure compliance with Section 8 of the NVRA would be futile.

### PLAINTIFF JUDICIAL WATCH

22.     Judicial Watch has approximately 9,480 members in the State of Ohio. As a membership organization, Judicial Watch represents the interests of these members, at least some

of whom are lawfully registered to vote and have the right to vote in the State of Ohio, including the right to vote in elections for federal office.

23.    A person becomes a member of Judicial Watch by making a financial contribution, in any amount, to the organization. The financial contributions of members are by far the single most important source of income to Judicial Watch and provide the means by which the organization finances its activities in support of its mission. Each of Judicial Watch's 9,480 members in the State of Ohio has made at least one financial contribution to Judicial Watch over the past two years and thus helped to finance the activities of the organization during this time period.

24.    Judicial Watch also solicits the views of its members in carrying out its activities in support of its mission, including the views of its members in the State of Ohio. The views of Judicial Watch's members exert a significant influence over how Judicial Watch chooses the activities in which it engages in support of its mission.

25.    Over 100 members of Judicial Watch who are lawfully registered to vote in the State of Ohio have informed Judicial Watch that they are concerned about the State of Ohio's failure to satisfy its voter list maintenance obligations under Section 8 of the NVRA and wish Judicial Watch to take action on their behalf to protect their right to vote. The views of these members were a substantial factor weighing in favor of the initiation of this lawsuit.

26.    Protecting the rights of members of Judicial Watch who are lawfully registered to vote in the State of Ohio is directly germane to Judicial Watch's mission of promoting integrity, transparency, and accountability in government and fidelity to the rule of law, as is ensuring compliance with the voter list maintenance obligations of Section 8 of the NVRA and protecting

the integrity of the election process in general. It also is well within the scope of the reasons why members of Judicial Watch join the organization and continue to support its mission.

27.    Members of Judicial Watch who are lawfully registered to vote in the State of Ohio not only have the constitutional right to vote in elections held in the State of Ohio, including elections for federal office, but they also have a statutory right to the safeguards and protections set forth in the NVRA, including the voter list maintenance obligations of Section 8 of the NVRA.

28.    The failure of the State of Ohio to satisfy its voter list maintenance obligations under Section 8 of the NVRA is injuring the right to vote of members of Judicial Watch who are lawfully registered to vote in the State of Ohio. More specifically, it is burdening members' constitutional right to vote by undermining their confidence in the integrity of the electoral process and discouraging them from voting. Because the State of Ohio has failed and is failing to satisfy its list maintenance obligations under Section 8 of the NVRA, lawfully registered voters, including members of Judicial Watch, are being deprived of any certainty that their votes will be given due weight and will not be cancelled out by the votes of persons who are not entitled to vote and therefore are being injured.

29.    The failure of the State of Ohio to satisfy its voter list maintenance obligations under Section 8 of the NVRA also is harming the statutory rights of members of Judicial Watch who are lawfully registered to vote in the State of Ohio. Specifically, because these members have registered to vote in the State of Ohio, they have a statutory right to vote in elections for federal office that comply with the procedures and protections required by the NVRA, including the voter list maintenance obligations set forth in Section 8 of the NVRA. The State of Ohio's failure to satisfy its voter list maintenance obligations under Section 8 of the NVRA therefore is

injuring the statutory rights of members of Judicial Watch who are lawfully registered to vote in the State of Ohio.

30.    Absent action by Judicial Watch, it is unlikely that any individual member of Judicial Watch who is lawfully registered to vote in the State of Ohio would have the ability or the resources to take action to protect his or her rights or redress his or her injuries with respect to the State of Ohio's failure to satisfy its voter list maintenance obligations under Section 8 of the NVRA.

### PLAINTIFF TRUE THE VOTE

31.    True the Vote regularly obtains official lists of registered voters from States across the nation, including the State of Ohio, and uses these lists to conduct programs in furtherance of True the Vote's mission of restoring truth, faith, and integrity to local, state, and federal elections. Because True the Vote makes use of these lists in conducting its various programs, it relies on States, including the State of Ohio, to provide lists that are reasonably accurate and current and reasonably maintained.

32.    One such program of True the Vote seeks to analyze and verify official lists of registered voters and detect errors in those lists. More specifically, True the Vote trains volunteers to review voter lists and to compare those lists to other publically available data. When a volunteer identifies registrations that appear to be duplicates or registrations of persons who are deceased, have relocated, or otherwise are ineligible to vote in a particular jurisdiction, those registrations are flagged and complaints are filed with appropriate elections officials. The goal of this particular program is to improve the accuracy and currency of voter lists above and beyond the minimum requirements of the law. This program is among the largest, if not the

largest, of all of True the Vote's various programs and is an essential, integral part of True the Vote's mission.

33.     As part of its voter list verification program, True the Vote obtained voter lists from the State of Ohio, recruited and trained volunteers to analyze and verify these lists, and began the process of analyzing and verifying them.

34.     The failure of the State of Ohio to satisfy its voter list maintenance obligations under Section 8 of the NVRA has injured and is injuring True the Vote. Because the State of Ohio has failed to satisfy its voter list maintenance obligations, the voter lists that True the Vote obtained from the State of Ohio are inaccurate and out of date, making it more difficult for True the Vote to use these lists in furtherance of its mission than it would have been if the State of Ohio had satisfied its voter list maintenance obligations under Section 8 of the NVRA. True the Vote has suffered an injury as a result.

35.     In addition, the failure of the State of Ohio to satisfy its voter list maintenance obligations under Section 8 of the NVRA has injured and is injuring True the Vote by impairing True the Vote's ability to achieve an essential, integral part of its mission, namely, its voter list verification program. True the Vote's voter list verification program relies on the States to conduct the reasonable voter list maintenance programs and activities required by Section 8 of the NVRA. The goal of True the Vote's voter list verification program is to improve the accuracy and currency of voter lists above and beyond the minimum requirements of the law. True the Vote's non-for-profit, volunteer efforts supplement the voter list maintenance programs and activities required of the States under Section 8 of the NVRA, but cannot duplicate or replace the States' taxpayer-funded voter list maintenance programs and activities. Because the State of Ohio has failed to satisfy its voter list maintenance obligations under Section 8 of the

NVRA, True the Vote is impaired in its ability to carry out its voter list verification program successfully in the State of Ohio and is injured as a result.

36.    Moreover, the State of Ohio's failure to satisfy its voter list maintenance obligations under Section 8 of the NVRA also has injured and is injuring True the Vote by causing it to divert resources away from other programs in order to devote those same resources to its voter list verification program.  For example, among its various programs to restore election integrity, True the Vote trains and mobilizes volunteers to work as election monitors. As part of this program, True the Vote creates instructional videos to recruit election monitors, holds training sessions and produces reference guides to educate election monitors, and directs volunteers who wish to serve as election monitors to appropriate channels.  Because the State of Ohio failed to satisfy its voter list maintenance obligations under Section 8 of the NVRA, True the Vote has had to expend less of its scarce resources on programs such as its election monitoring program in order to expend more resources on its voter list verification program.

37.    As of August 10, 2012, True the Vote has expended over 150 hours of organizational time training volunteers to analyze and verify the voter lists that True the Vote obtained from the State of Ohio for True the Vote's voter list verification program.  As of this same date, True the Vote has only expended approximately 50 hours in support of its election monitoring program in the State of Ohio.  True the Vote estimates that, due to the failure of the State of Ohio to satisfy its voter list maintenance obligations under Section 8 of the NVRA, it has diverted approximately 100 hours of organizational time away from its election monitoring program in order to devote those same scarce resources to its voter list verification program, causing injury to True the Vote as a result.

JUN-23-2014 16:15 WELTMAN WEINBERG REIS

## CLAIM FOR RELIEF

### (Violation of the NVRA: Failure to Conduct List Maintenance)

38. Plaintiffs reallege paragraphs 1 through 37 as if fully stated herein.

39. Defendant has failed to fulfill the State's obligation to make reasonable efforts to remove the names of ineligible voters from Ohio's voter registration rolls, in violation of Section 8 of NVRA (42 U.S.C. § 1973gg-6).

40. Plaintiff True the Vote and members of Plaintiff Judicial Watch have suffered irreparable injury as a direct result of Defendant's failure to fulfill the State of Ohio's obligation to make reasonable efforts to remove the names of ineligible voters from Ohio's voter registration rolls in violation of Section 8 of the NVRA.

41. Plaintiff True the Vote and members of Plaintiff Judicial Watch will continue to suffer irreparable injury by Defendant's failure to fulfill the State of Ohio's obligation to make reasonable efforts to remove the names of ineligible voters from Ohio's voter registration rolls in violation of Section 8 of the NVRA unless and until Defendant is enjoined from continuing to violate the law.

42. Plaintiff True the Vote and members of Plaintiff Judicial Watch have no adequate remedy at law.

12

JUN-23-2014  16:15        WELTMAN WEINBERG REIS

Case: 2:12-cv-00792-EAS-TPK Doc #: 1 Filed: 08/30/12 Page: 13 of 13 PAGEID #: 13

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for entry of a judgment:

1.      Declaring Defendant to be in violation of Section 8 of the NVRA;

2.      Enjoining Defendant from failing or refusing to comply with the voter list

maintenance obligations of Section 8 of the NVRA in the future;

3.      Ordering Defendant to pay Plaintiffs' reasonable attorney's fees, including

litigation expenses and costs, pursuant to 42 U.S.C. § 1973gg-9(c); and

4.      Granting Plaintiffs any and all further relief that this Court deems just and proper.


Dated: August 30, 2012                          Respectfully submitted,

                                                Paul J. Orfanedes*
                                                Chris Fedeli*
                                                JUDICIAL WATCH, INC.
                                                425 Third Street S.W., Ste. 800
                                                Washington, DC 20024
                                                Tel: (202) 646-5172
                                                Fax: (202) 646-5199
                                                Email: porfanedes@judicialwatch.org
                                                      cfedeli@judicialwatch.org

                                                */s/ David R. Langdon*
                                                David R. Langdon (OH Bar No. 0067046)
                                                  *Trial Attorney*
                                                Joshua B. Bolinger (OH Bar No. 0079594)
                                                LANGDON LAW LLC
                                                8913 Cincinnati-Dayton Rd.
                                                West Chester, Ohio 45069
                                                Tel: (513) 577-7380
                                                Fax: (513) 577-7383
                                                Email: dlangdon@langdonlaw.com
                                                      jbolinger@langdonlaw.com

*Of Counsel:*                                   *Attorneys for Plaintiffs*
J. Christian Adams
ELECTION LAW CENTER, PLLC                       *pending admission *pro vac vice**
300 N. Washington Street, Ste. 405
Alexandria, VA 22314

JUN-23-2014  16:15          WELTMAN WEINBERG REIS

**COURT OF COMMON PLEAS**
**DIVISION OF DOMESTIC RELATIONS**
**CUYAHOGA COUNTY, OHIO**

| | | |
|---|---|---|
| LARRY ELLIOT KLAYMAN | : | Case No: DR07 316840 |
| Petitioner | : | |
| | | Judge: DIANE M. PALOS |
| - vs - | : | |
| STEPHANIE ANN LUCK | : | **JUDGMENT ENTRY** |
| Respondent | : | |

This matter came on for hearing on June 29th, and June 30th, July 2nd, October 23rd, 26th, 27th, 28th and 29th, November 3rd, 4th, and 5th, as well as December 1st, 2nd, 3rd and December 4, 2009, before Magistrate Lawrence R. Loeb upon the Petitioner's Motion For Allocation of Parental Rights & Responsibilities, Motion No. 246178: Petitioner's Motion For Attorney Fees, Motion No. 246180; Petitioner's Motion To Show Cause, Motion No. 247721; Respondent's Motion Motion to Modify Divorce Decree (denominated by the Court as Modify Existing Order Of Court), Motion No. 249314; Respondent's Motion For Attorney Fees, Motion No. 253120; Respondent's Motion For Sanctions, Motion No. 253121; Respondent's Motion To Show Cause Noncompliance With Judgment Entry, Motion No. 260457; Respondent's Motion For Attorney Fees, Motion No. 288236 and Respondent's Motion For Attorney Fees, Motion No. 290239.

The Court adopts the Magistrate's Decision filed **June 9, 2010**, in its entirety.

**IT IS HEREBY ORDERED:**

**AFTER CONSIDERING THE MAGISTRATE'S DECISION FILED JUNE 9, 2010, PLEADINGS, EXHIBITS, AND COMPLETE TRANSCRIPT, PETITIONER'S PRELIMINARY OBJECTIONS FILED JUNE 23, 2010, AND SUPPLEMENTAL OBJECTIONS FILED APRIL 22, 2011, ARE HEREBY OVERRULED AND THE DECISION OF THE MAGISTRATE ADOPTED WITHOUT MODIFICATION.**

Petitioner/Plaintiff's Motion For Allocation of Parental Rights & Responsibilities, Motion No. 246178, and Petitioner/Plaintiff's Motion to Show Cause, Motion No. 247721, are dismissed with prejudice. Respondent/Defendant's Motion to Modify Divorce Decree, Motion No. 249314, is granted. Pending further order of Court the Petitioner/Plaintiff shall have supervised parenting time with the minor children every other weekend, except when the children are out of the town for vacation, from Saturday at 10:00 a.m. to 7:00 p.m. and on Sunday from 10:00 a.m. to 7:00 p.m. with a supervisor to be selected by the Respondent/Defendant and paid for by the Petitioner/Plaintiff. In addition, the Petitioner/Plaintiff shall have supervised visitation with the children from 10:00 a.m. to 7:00 p.m. on the holidays specified in the parties' Virginia divorce decree.

**EXHIBIT 2**

The Petitioner/Plaintiff shall not move this Court to modify the supervised parenting time and the Court shall not consider a motion to modify supervised parenting time or modify the supervised parenting time schedule set forth in the preceeding paragraph until the Petitioner/Plaintiff submits to a full psychiatric or psychological evaluation to be conducted by a psychiatrist or psychologist in the Greater Cleveland area acceptable to the Respondent/Defendant. The Petitioner/Plaintiff shall sign releases for the individual conducting the evaluation to have full access to any and all medical and/or psychological records and/or records of any counselor with whom the Petitioner/Plaintiff has consulted for any reason and for any other records that the person conducting the evaluation may deem necessary in order to compete the evaluation. The Respondent/Defendant shall have full access to the person conducting the evaluation and may provide the evaluator with whatever documents she believes the person conducting the evaluation may need in order to complete his/her evaluation. The cost of the evaluation shall be borne by the Petitioner/Plaintiff.

Petitioner/Plaintiff's Motion for Attorney Fees, Motion No. 246180, is denied. Respondent/Defendant's Motion for Sanctions, Motion No. 253121, is denied. Respondent/Defendant's Motion to Show Cause, Motion No. 260457, is denied. Respondent/Defendant's Motions for Attorney Fees, Motion No. 288236, Motion No. 290239, Motion No. 253120, and the motion she filed for Attorney Fees at the same time that she filed her Motion to Modify Decree are granted. The Respondent/Defendant is hereby awarded attorney fees in the anmout of $ 325,000.00 for which judgement is rendered and execution shall issue.

Costs adjudged against the Plaintiff.

**JUDGE DIANE M. PALOS**

pap

cc:     Roger L. Kleinman, Esq.
        Attorney for Petitioner

        Suzanne M. Jambe, Esq.
        Attorney for Respondent

        Jennifer L. Malensek, Esq.
        Guardian ad Litem

DR-H733                                    2

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 13-20610-CIV-ALTONAGA

LARRY KLAYMAN,

    Plaintiff,

v.

JUDICIAL WATCH, INC.,

    Defendant.

_____/

### Verdict Form

We, the jury, unanimously find as follows:

1.    Do you find from a preponderance of the evidence that Plaintiff Larry Klayman was defamed by Defendant Judicial Watch?

        Yes $\checkmark$  No _____

(If your answer is "yes," proceed to the next question. If the answer is "no," sign the verdict form.)

2.    Do you find from a preponderance of the evidence that Plaintiff Larry Klayman should be awarded compensatory damages against Defendant Judicial Watch?

        Yes $\checkmark$  No _____

If your answer is "Yes,"

        in what amount: $ 156,000.00 .

(If your answer is "yes," skip question 3 and proceed to question 4. If your answer is "no," proceed to question 3.).

**EXHIBIT 3**

JUN-23-2014  16:16        WELTMAN WEINBERG REIS                                    P.24/25

3.    Do you find from a preponderance of the evidence that Plaintiff Larry
Klayman should be awarded nominal damages against Defendant Judicial Watch?

                 Yes _____   No __✓__

If your answer is "Yes,"

                    in what amount: $__N/A__.

(Proceed to question 4.).

4.    Under the circumstances of this case, state whether you find by clear and
convincing evidence that punitive damages are warranted against Defendant
Judicial Watch:

                 Yes __✓__   No _____

If your answer is "Yes,"

                    in what amount: $ 25,000.00.

So say we all this __10__ day of June, 2014.

                                  _____
                                          Foreperson .

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 13-20610-CIV-ALTONAGA

**LARRY KLAYMAN,**

Plaintiff,

v.

**JUDICIAL WATCH, INC.,**

Defendant.

_____/

### FINAL JUDGMENT

**THIS CAUSE** came for trial before the Court and a jury, United States District Judge, Cecilia M. Altonaga, presiding, and the issues having been duly tried and the jury having duly rendered its verdict on June 10, 2014, it is

**ORDERED AND ADJUDGED** that Judgment is entered in favor of Plaintiff, Larry Klayman, and against Defendant, Judicial Watch Inc., in the amount of **$156,000.00** for compensatory damages and **$25,000.00** for punitive damages, totaling **$181,000.00**, for which sum let execution issue. Requests for costs and attorneys' fees shall not be submitted until after any post-trial motions are decided or an appeal is concluded, whichever occurs later. This judgment shall bear interest at the rate as prescribed by 28 U.S.C. section 1961, and shall be enforceable as prescribed by 28 U.S.C. sections 2001–2007, 28 U.S.C. sections 3001–3308, and Federal Rule of Civil Procedure 69(a). The Clerk shall mark this case closed.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of June, 2014.

*Cecilia M. Altonaga*

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

**EXHIBIT 4**

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-20610-CIV-ALTONAGA/O'Sullivan

LARRY E. KLAYMAN,

      Plaintiff,

v.

JUDICIAL WATCH, INC.,

      Defendant.

_____/

## DEFENDANT'S *UNOPPOSED* MOTION TO DEPOSIT JUDGMENT INTO REGISTRY OF COURT WITH SUPPORTING MEMORANDUM OF LAW

Defendant Judicial Watch, Inc. ("Judicial Watch"), through undersigned counsel and pursuant to Rule 67 of the Federal Rules of Civil Procedure, moves this Court for an Order permitting Judicial Watch to deposit the amount of the final judgment into the Registry of the Court. Grounds for this motion are set forth in the attached Memorandum of Law.

## MEMORANDUM OF LAW

Rule 67 of the Federal Rules of Civil Procedure states in part:

(a) Depositing Property. If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party--on notice to every other party and by leave of court--may deposit with the court all or part of the money or thing, whether or not that party claims any of it. The depositing party must deliver to the clerk a copy of the order permitting deposit.

On June 10, 2014, this Court entered Final Judgment in favor of Plaintiff and against Defendant in the total sum of $181,000. Defendant Judicial Watch wishes to pay the total sum of the Final Judgment. However, another party is claiming an interest in the Final Judgment.

Specifically, Plaintiff's former wife, Stephanie Luck, has filed a Creditor's Bill in the Court of Common Pleas, Cuyahoga County, Ohio. *Please see Exhibit 1.* Stephanie Luck asserts

Case 6:16-mc-01980-RBW Document 6 Filed 5/20/16 Docket Page 35 of 74

that she obtained a judgment against Larry Klayman, the plaintiff herein, in the amount of $325,000 and that the judgment remains unsatisfied. Stephanie Luck asserts that Larry Klayman "has no real or personal property sufficient to satisfy the [$325,000] judgment." Stephanie Luck asserts that Judicial Watch should be ordered to pay her the $181,000 judgment entered in this case.

Both the plaintiff Larry Klayman and Stephanie Luck claim an interest in the judgment entered in favor of plaintiff and against Judicial Watch. There is a genuine dispute, between parties other than Judicial Watch, regarding the entitlement to the funds. Judicial Watch is concerned that Stephanie Luck will assert claims or will seek judgment against Judicial Watch if Judicial Watch fails to pay the amount of the judgment to Stephanie Luck.

Judicial Watch reasonably believed that the Ohio Creditor's Bill would be promptly resolved. The parties filed motions to dismiss, which were denied by the Court. It is uncertain when the Ohio litigation will conclude. The Ohio litigation is presently scheduled for a case management conference on May 27, 2015.

Accordingly, Judicial Watch requests permission to deposit the amount of the judgment into the Registry of the Court pending resolution of the dispute between Klayman and Luck concerning the entitlement to the funds.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Undersigned counsel certifies that he conferred with Plaintiff prior to filing this motion. Plaintiff does not oppose the deposit of the amount of the judgment into the court registry but Plaintiff disagrees with Defendant's recitation of the law and facts.

Dated: **February 17, 2015**                 Respectfully submitted,

                                                  SCHWED KAHLE & KRESS, P.A.
                                                  11410 North Jog Road, Suite 100
                                                  Palm Beach Gardens, FL 33418
                                                  Telephone: (561) 694-0070
                                                  Facsimile: (561) 694-0057


                                                  /s/ Douglas J. Kress_____
                                                  Douglas J. Kress, Esq.
                                                  Florida Bar No.: 0061146
                                                  Email: dkress@schwedpa.com
                                                  *Attorneys for Defendant Judicial Watch, Inc.*

### Certificate of Service with Respect to Plaintiff Klayman

I hereby certify that on **February 17, 2015**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                  /s/ Douglas J. Kress_____
                                                  Douglas J. Kress, Esq.
                                                  Florida Bar No.: 0061146

### SERVICE LIST

LARRY KLAYMAN, ESQ.
2520 Coral Way, Suite 2027
Miami, FL 33145
Telephone: (310) 595-0800
Email: leklayman@gmail.com

VIA CM/ECF

Case 96116-cv-01080-RBW Documented of FileUSD/29/06cket Page 37 of 74 Page 4 of 4

## Certificate of Service with Respect to Stephanie Luck

     I hereby certify that on **February 17, 2015**, the foregoing motion was sent by email and U.S. Mail to counsel for Stephanie Luck, Robert B. Weltman, Lakeside Place, Suite 200, 323 Lakeside Avenue, West, Cleveland, OH 44113, rweltman@weltman.com.

                          /s/ Douglas J. Kress_____

                          Douglas J. Kress, Esq.

                          Florida Bar No.: 0061146

# EXHIBIT C

```
Court Name: SOUTHERN DISTRICT OF FLORIDA
Division: 1
Receipt Number: FLS100095156
Cashier ID: jmorgan
Transaction Date: 02/19/2015
Payer Name: SCHWED KAHLE AND KRESS PA
----------------------------------
TREASURY REGISTRY
 For: SCHWED KAHLE AND KRESS PA
 Case/Party: D-FLS-1-13-CV-020610-001
 Amount:      $181,000.00
----------------------------------
PAPER CHECK CONVERSION
 Check/Money Order Num: 1764
 Amt Tendered: $181,000.00
----------------------------------
Total Due:     $181,000.00
Total Tendered: $181,000.00
Change Amt:    $0.00

REMITTER:

SCHWED KAHLE AND KRESS PA

11410 N JOG RD STE 100

PALM BEACH GARDENS, FL 33418


PER COURT ORDER

DK# 178
1:13-CV-20610-001


Returned check fee $53


Checks and drafts are accepted
subject to collection and full
credit will only be given when the
check or draft has been accepted by
the financial institution on which
it was drawn.
```

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 13-20610-CIV-ALTONAGA**

**LARRY KLAYMAN**,

      Plaintiff,

v.

**JUDICIAL WATCH, INC**.,

      Defendant.

_____/

**ORDER**

**THIS CAUSE** came before the Court upon Plaintiff Larry Klayman's Renewed Motion for Withdrawal of a Deposit Pursuant to FRCP 67(b) ("Motion") [ECF No. 188], filed May 7, 2015. This case was closed on June 11, 2014. (*See* Final Judgment [ECF No. 157]). On February 17, 2015, Defendant Judicial Watch Inc. filed an Unopposed Motion to Deposit Judgment into Registry of Court [ECF No. 177], on the basis that Plaintiff's former wife claimed an interest in the Final Judgment of $181,000 due to Plaintiff. On February 18, 2015, the Court permitted Defendant to pay the final judgment into the Court's registry. (*See* February Order [ECF No. 178]). A careful consideration of the filings following that deposit reveals the question of who should receive the funds deposited by the Defendant and in what amounts may involve protracted proceedings and new claims and defenses by a new party having nothing to do with the underlying and long-concluded action. Therefore, it is

**ORDERED AND ADJUDGED** that the Court's February Order **[ECF No. 178]** is **VACATED**. The Clerk of the Court shall re-disburse the funds to Defendant. The Clerk of the Court shall mail Defendant's check to Defendant's counsel of record. Plaintiff's Motion **[ECF No. 188]** is **DENIED**. If appropriate, Defendant may initiate a separate interpleader action pursuant to Federal Rule of Civil Procedure 22 and 28 U.S.C. section 1335. *See Perkins State*

*Bank v. Connolly*, 632 F.2d 1306, 1311 (5th Cir. 1980) (A "federal interpleader action . . . protects a stakeholder who holds funds claimed by two or more adverse parties from multiple liability.") (alterations added)).

      **DONE AND ORDERED** in Chambers at Miami, Florida, this 8th day of May, 2015.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

# EXHIBIT E

**IN UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 13-20610-CIV-ALTONAGA/ O'Sullivan

LARRY KLAYMAN,

                      Plaintiff,

v.

JUDICIAL WATCH, et. al.


                     Defendants.

_____/



**<u>NOTICE OF APPEAL</u>**


      **NOTICE** is hereby given that Plaintiff Larry Klayman appeals to the United States Court

of Appeals for the Eleventh Circuit the Order of this Court entered on May 8, 2015 (Docket No.

189) (Exhibit 1) that denied Plaintiff's Motion for Withdrawal of a Deposit Pursuant to FRCP

67(b).


Dated: May 12, 2015


                                      Respectfully Submitted,

                                      */s/ Larry Klayman*_____
                                      LARRY KLAYMAN
                                      2520 Coral Way, Suite 2027
                                      Miami, FL 33145
                                      (310) 595-0800
                                      leklayman@gmail.com

                                      Plaintiff Pro Se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 12, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system. I also certify that the foregoing document is being served this date on all counsel of record or pro se parties on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Larry Klayman*
LARRY KLAYMAN

Plaintiff Pro Se

## SERVICE LIST

**Douglas James Kress**
Schwed Kahle & Jenks, P.A.
11410 North Jog Road
Suite 100
Palm Beach Gardens, FL 33418
561-694-0070
Fax: 561-694-0057
Email: dkress@schwedpa.com

VIA CM/ECF

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 13-20610-CIV-ALTONAGA**

**LARRY KLAYMAN**,

      Plaintiff,

v.

**JUDICIAL WATCH, INC**.,

      Defendant.

_____/

<u>**ORDER**</u>

**THIS CAUSE** came before the Court upon Plaintiff Larry Klayman's Renewed Motion for Withdrawal of a Deposit Pursuant to FRCP 67(b) ("Motion") [ECF No. 188], filed May 7, 2015. This case was closed on June 11, 2014. (*See* Final Judgment [ECF No. 157]). On February 17, 2015, Defendant Judicial Watch Inc. filed an Unopposed Motion to Deposit Judgment into Registry of Court [ECF No. 177], on the basis that Plaintiff's former wife claimed an interest in the Final Judgment of $181,000 due to Plaintiff. On February 18, 2015, the Court permitted Defendant to pay the final judgment into the Court's registry. (*See* February Order [ECF No. 178]). A careful consideration of the filings following that deposit reveals the question of who should receive the funds deposited by the Defendant and in what amounts may involve protracted proceedings and new claims and defenses by a new party having nothing to do with the underlying and long-concluded action. Therefore, it is

**ORDERED AND ADJUDGED** that the Court's February Order **[ECF No. 178]** is **VACATED**. The Clerk of the Court shall re-disburse the funds to Defendant. The Clerk of the Court shall mail Defendant's check to Defendant's counsel of record. Plaintiff's Motion **[ECF No. 188]** is **DENIED**. If appropriate, Defendant may initiate a separate interpleader action pursuant to Federal Rule of Civil Procedure 22 and 28 U.S.C. section 1335. *See Perkins State*

CASE NO.: 13-20610-CIV-ALTONAGA

*Bank v. Connolly*, 632 F.2d 1306, 1311 (5th Cir. 1980) (A "federal interpleader action . . . protects a stakeholder who holds funds claimed by two or more adverse parties from multiple liability.") (alterations added)).

　　　**DONE AND ORDERED** in Chambers at Miami, Florida, this 8th day of May, 2015.

　　　　　　　　　　　　　　　_____

　　　　　　　　　　　　　　　**CECILIA M. ALTONAGA**
　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

cc:　　　counsel of record

# EXHIBIT F


90893408

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

STEPHANIE ANN LUCK
    Plaintiff

Case No: CV-14-828766

Judge: BRIAN J CORRIGAN

LARRY ELLIOT KLAYMAN, ET AL.
    Defendant

## JOURNAL ENTRY

DEFENDANT'S MOTION TO REENTER JUDGMENT, FILED 08/18/2015, IS UNOPPOSED AND GRANTED. THE JULY 22, 2015 JOURNAL ENTRY IS HEREBY AMENDED TO READ AS FOLLOWS:

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, FILED 03/12/2015, IS GRANTED IN PART.

PLAINTIFF ASKS THIS COURT TO ISSUE AN ORDER DIRECTING THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA TO PAY AND APPLY UPON PLAINTIFF'S JUDGMENT AGAINST KLAYMAN THE $181,000 DEPOSITED WITH IT BY JUDICIAL WATCH. THE COURT AGREES WITH DEFENDANT KLAYMAN THAT THIS COURT IS WITHOUT AUTHORITY TO ORDER A FEDERAL DISTRICT COURT TO PAY FUNDS DEPOSITED THEREIN TO PLAINTIFF. FURTHERMORE, THE DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA HAS ORDERED THE $181,000 RETURNED TO JUDICIAL WATCH. THE STATUS OF THE $181,000 IS CURRENTLY IN FLUX, AS DEFENDANT KLAYMAN HAS APPEALED THAT COURT'S DECISION TO RETURN THE FUNDS TO JUDICIAL WATCH, AND THAT APPEAL REMAINS PENDING.

IT IS CLEAR TO THE COURT, HOWEVER, THAT PLAINTIFF PROCURED A JUDGMENT IN CUYAHOGA COUNTY DOMESTIC RELATIONS COURT AGAINST DEFENDANT KLAYMAN, THAT JUDGMENT WAS AFFIRMED BY THE EIGHTH DISTRICT COURT OF APPEALS, AND AT THIS TIME PLAINTIFF IS ENTITLED TO COLLECT ON THAT JUDGMENT. IT IS NOT CLEAR WHAT ASSETS DEFENDANT KLAYMAN HAS TO SATISFY THAT JUDGMENT.

TO THAT END, THE COURT HEREBY ENJOINS DEFENDANT JUDICIAL WATCH FROM PAYING ANY OF THE $181,000 TO DEFENDANT KLAYMAN. THIS ORDER IS SUBJECT TO CHANGE.

THE COURT DECLINES TO RULE UPON DEFENDANT JUDICIAL WATCH'S MOTION FOR SUMMARY JUDGMENT AT THIS TIME.

THERE IS NO JUST CAUSE FOR DELAY.

IT IS SO ORDERED. FINAL.

Judge Signature        09/16/2015

09/14/2015

# EXHIBIT G

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12085
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cv-20610-CMA

LARRY E. KLAYMAN,

Plaintiff-Appellant,

versus

JUDICIAL WATCH, INC.,
THOMAS FITTON,
PAUL ORFANEDES,
CHRISTOPHER FARRELL,
CONSTANCE RUFFLEY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 27, 2016)

Before WILLIAM PRYOR, ROSENBAUM, and FAY, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Larry Klayman, an attorney proceeding *pro se*, filed this defamation suit against the organization he founded, Judicial Watch, Inc.[1] Klayman alleged that employees of Judicial Watch published a false statement claiming that he had been convicted of a crime for failing to pay a large amount of child support.  A federal jury found that Klayman had been defamed and awarded him $156,000 in compensatory damages and $25,000 in punitive damages, for a total award of $181,000.

After entry of judgment on the verdict, Judicial Watch filed an unopposed motion to deposit the judgment amount into the registry of the court, pursuant to Rule 67, Fed. R. Civ. P.  According to Judicial Watch, Klayman's ex-wife had demanded that the judgment amount be paid to her instead of Klayman to satisfy a $325,000 judgment she had obtained against Klayman in an unrelated proceeding. Klayman's ex-wife had filed a creditor's bill in Ohio state court naming Klayman and Judicial Watch as defendants.  Concerned about its liability to Klayman's ex-wife, Judicial Watch sought to deposit the amount of the judgment "pending resolution of the dispute between Klayman and [his ex-wife] concerning the

---

[1] Klayman named several individuals as defendants in his amended complaint, but these individuals were dismissed for lack of personal jurisdiction early in the proceeding.  Klayman also raised other claims, but only the defamation claim was charged to the jury.

entitlement to the funds."  The court granted the motion, and Judicial Watch deposited the funds on February 19, 2015.

In May 2015, Klayman moved to withdraw the funds under Rule 67(b), Fed. R. Civ. P., raising various arguments as to why he was entitled to the funds notwithstanding his ex-wife's demand.  The district court denied Klayman's motion.  In the same order, the court also vacated its prior order granting Judicial Watch's unopposed motion to deposit funds into the court's registry.  The court found that "the question of who should receive the funds deposited by the Defendant and in what amounts may involve protracted proceedings and new claims and defenses by a new party having nothing to do with the underlying and long-concluded action."  Consequently, the court ordered the money returned to Judicial Watch, noting that Judicial Watch may initiate a separate interpleader action to protect itself.  Klayman appeals the district court's denial of his motion to withdraw the funds.

We review for an abuse of discretion a district court's decisions allowing deposit into or withdrawal from the court's registry under Rule 67, Fed. R. Civ. P. *Zelaya/Capital Int'l Judgment, LLC v. Zelaya*, 769 F.3d 1296, 1300 (11th Cir. 2014).  Under this deferential standard of review, we must affirm unless the district court "applied the wrong law or its decision was manifestly erroneous."  *Id.* at 1301.

3

Rule 67 of the Federal Rules of Civil Procedure provides that "[i]f any part of the relief sought is a money judgment or the disposition of a sum of money . . . , a party . . . may deposit with the court all or part of the money."  Fed. R. Civ. P. 67(a).  Any money paid into the court under Rule 67 "must be deposited and withdrawn in accordance with 28 U.S.C. §§ 2041 and 2042 and any like statute." Fed. R. Civ. P. 67(b).  Under § 2041,

> All moneys paid into any court of the United States, or received by the officers thereof, in any case pending or adjudicated in such court, shall be forthwith deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of such court.
>
> This section shall not prevent the delivery of any such money to the rightful owners upon security, according to agreement of parties, under the direction of the court.

28 U.S.C. § 2041.  Section 2042 provides that "[n]o money deposited under section 2041 of this title shall be withdrawn except by order of court."  28 U.S.C. § 2042.

The core purpose of Rule 67 is "to relieve the depositor of responsibility for a fund in dispute, such as in an interpleader action."  *Gulf States Utils. Co. v. Ala. Power Co.*, 824 F.2d 1465, 1474 (5th Cir. 1987); *see also Zelaya*, 769 F.3d at 1302.  An interpleader action typically proceeds in two stages.  *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009).  First, the court determines whether interpleader is proper and "whether to discharge the stakeholder from further liability to the claimants."  *Id.*  Second, the court evaluates "the respective

4

rights of the claimants to the interpleaded funds." *Id.* The law does not require a judgment debtor to decide the validity of competing claims to the judgment amount. *Zelaya*, 769 F.3d at 1302-03. Rather, once funds are deposited, it is the district court which "should determine ownership and make disbursement." *Gulf States Utils Co.*, 824 F.2d at 1474.

Here, the district court did not abuse its discretion. We are not persuaded by Klayman's arguments that the court should have allowed him to withdraw the money. Judicial Watch deposited the funds because, it alleged, it faced competing claims for the judgment amount and wished to protect itself from multiple liability. In view of that purpose, it would not have made sense for the court to simply allow Klayman to withdraw the funds without protecting Judicial Watch from a potential claim from Klayman's ex-wife or determining "the respective rights of the claimants" to the funds. *See Hovis*, 553 F.3d at 262. Therefore, it was reasonable for the court to deny Klayman's motion to withdraw when the reasons for which the court allowed Judicial Watch to deposit the funds had not been resolved.

Furthermore, the district court rationally ordered the funds returned to Judicial Watch. While the district court initially allowed Judicial Watch, with Klayman's acquiescence, to deposit the judgment amount into the court's registry, the court later recognized that the dispute should not be handled post-judgment in a concluded case. Specifically, the court found that the dispute over the judgment

funds "may involve protracted proceedings and new claims and defenses by a new party having nothing to do with the underlying and long-concluded action."   In other words, the district court determined that the judgment amount should not have been deposited into the court's registry in the first place and that the nature of the dispute was more appropriate for an interpleader action, if necessary.   Because no interpleader action had been filed, the court reasonably ordered the money returned to Judicial Watch.

By ordering the return of the deposited funds, the district court effectively returned the parties to the same positions they were in before the deposit occurred. Klayman still has a $181,000 judgment against Judicial Watch, and he may pursue whatever legal options are available to him to collect on that amount.   *See, e.g.*, Fed. R. Civ. P. 69.   But Klayman has identified no authority under which the district court was required to allow him to withdraw the deposited funds, nor has he shown that the court made a clear error of judgment in denying his motion to withdraw and ordering the funds returned to Judicial Watch.   *See Zelaya*, 769 F.3d at 1300-01.   Accordingly, we affirm the denial of his motion to withdraw.

**AFFIRMED.**

6

# EXHIBIT H

No. 15-12085

IN THE
**UNITED STATES COURT OF APPEALS**
FOR THE
**ELEVENTH CIRCUIT**

LARRY KLAYMAN,
*Plaintiff-Appellant*

— v. —

JUDICIAL WATCH, ET. AL.
*Defendants-Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(CASE NO: 13-20610-CIV-ALTONAGA/O'SULLIVAN)

## PLAINTIFF/APPELLANT'S PETITION FOR REHEARING EN BANC

LARRY KLAYMAN
FL Bar No. 246220
7050 W Palmetto Park Rd.
Suite 15-287
Boca Raton, FL 33433
(310) 595-0800
leklayman@gmail.com
*Appellant Pro Se*

DATED: June 17, 2016

## CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT

Plaintiff/Appellant, Larry Klayman, certifies that the following is a complete list of the trial judge, attorneys, persons, associations of persons, firms, partnerships, or corporations known to it that have an interest in the outcome of this case as defined by 11th Circuit Local Rule 26.1-1.

Trial Judge:

Cecilia M. Altonaga

Attorneys:

Larry Klayman and Douglas Kress

Persons, association of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal:

Judicial Watch, Inc. and its employees, Tom Fitton, Paul Orfaneses, and Christopher Farrell

The Law Firm of Schwed Kahle & Kress

## RULE 35(b)(1) STATEMENT

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance: (1) because if the lower court decision is allowed to stand it, will nullify the collection of judgments under the circumstances set forth below. The lower court is in effect assisting a state court, which has no jurisdiction over it, to allow the proceeds of a judgment to not be paid to the victor in the lower federal court action.

/s/ *Larry Klayman*
LARRY KLAYMAN
7050 W Palmetto Park Rd.
Suite 15-287
Boca Raton, FL 33433
(310) 595-0800
leklayman@gmail.com

*Appellant Pro Se*

ii

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

RULE 35(b)(1) STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## TABLE OF AUTHORITIES

**Cases**

*Crosby v. National Foreign Trade Council,*
    530 U.S. 363 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Edgar v. MITE Corp.,*
    457 U.S. 624 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Klayman v. Luck,*
    No. DR 07 316840. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Klayman v. Deluca,*
    No. 15-cv-80310 (S.D.F.L.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Luck v. Klayman,*
    No. CV 14 828766. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Muskrat v. United States,*
    219 U.S. 346 (1911) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

**Rules**

Fed. R. Civ. P. 67. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 8

Fed. R. Civ. P. 67(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 6

**Statutes**

28 U.S.C. § 2041 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

## STATEMENT OF THE ISSUE

Whether the district court and now the appellate panel erred in denying

Plaintiff/Appellant's Motion to Withdraw funds that were being held by the

District Court in its registry when there was no statutory authority preventing the

monies from being dispersed to Plaintiff/Appellant.

## STATEMENT OF THE CASE

Plaintiff/Appellant, Larry Klayman, brought this lawsuit against

Defendant/Appellee, Judicial Watch, on February 19, 2013 for defamation and

defamation per se. The action arose out of the knowingly false statements made by

Constance Ruffley ("Ruffley"), an office administrator and management

representative of Judicial Watch, who, while acting under the authority and

direction of Judicial Watch's directors, maliciously conveyed false and defamatory

statements about Plaintiff/Appellant to Orly Taitz ("Taitz"), alleging that

Plaintiff/Appellant had been "convicted" of a crime for not paying child support

and stating that donors should know about Plaintiff/Appellant's alleged conviction.

On June 10, 2014, this Court entered Final Judgment in favor of

Plaintiff/Appellant and against Defendant/Appellee in the total sum of $181,000,

which included punitive damages. Defendant/Appellee Judicial Watch chose not to

appeal the judgment of the District Court.

## STATEMENT OF FACTS

This action arises from a series of events that took place after Plaintiff/Appellant left Judicial Watch, a non-profit organization he had founded, and subsequently gained notoriety and national recognition for his high profile lawsuits through his non- profit organization, Freedom Watch (ECF No. 5; Amended Complaint ("Am. Compl.") ¶ 1. Consequently, employees of Judicial Watch, acting in concert with each other, had set out to willfully and maliciously harm Plaintiff/Appellant and his reputation, as well as harm his successful law practice. Am. Compl. ¶ 15. Specifically, Thomas Fitton ("Fitton"), Paul Orfanedes ("Orfanedes"), Ruffley, and Christopher Farrell ("Farrell"), directly and through other agents of Judicial Watch, defamed, disparaged, and denigrated Plaintiff/Appellant in order to discredit him and irreparably damage Plaintiff/Appellant's reputation.

Ruffley, an Office Administrator and Representative of Judicial Watch, engaged in a conversation and published with "Dr. Orly Taitz, Esquire" on or around February 22, 2012, while attending an event. Am. Compl. ¶ 12-13 Taitz is widely known as the founder of the "Defend Our Freedom Foundation" and maintains the popular self-proclaimed website, "The World's Leading Obama Eligibility Website." Am. Compl. ¶ 13. Klayman had made it known that he had intended to file lawsuits in Florida challenging the eligibility of Barack Obama to

run for re-election. Am. Compl. ¶ 14. During Ruffley's conversation with Taitz,

Ruffley intentionally conveyed a false and defamatory statement about

Plaintiff/Appellant, alleging that Plaintiff/Appellant had been "convicted" of a

crime for not paying child support. Am. Compl. ¶ 15. This statement was purely

false.

Specifically, as pled in the Complaint, this false statement was conveyed to

Taitz with the intention and expectation that Taitz would further spread the

malicious remark by publishing it on her popular and widely viewed website. Am.

Compl. ¶ 13. Moreover, as evidenced by the facts and circumstances,

Defendant/Appellee not only anticipated that Taitz would publish the false

statement on her popular website, but that said publication would perpetuate

further dissemination and publication of the false statement in hopes that it would

be widely circulated in this district, nationally, and worldwide. Am. Compl. ¶ 13.

Defendant/Appellee's ploy was successful as the false and malicious

statement was, in fact, published on Taitz' website and was, as predicted, further

disseminated, nationally and worldwide, directly reaching and effecting

Plaintiff/Appellant in this district. Am. Compl. ¶ 13. More specifically, as a direct

result of Defendant/Appellee's intentional conduct, the false statements were

disseminated in and circulated in this district where Plaintiff/Appellant resides and

conducts business as a lawyer licensed to practice in Florida, thus, intentionally

harming Plaintiff/Appellant personally and professionally and his standing in his

community. Am. Compl. ¶ 20.

As a result of the false statement, accusing Plaintiff/Appellant of committing

a crime, and the resulting reputational harm, Defendant/Appellee not only

subjected Plaintiff/Appellant to ridicule, humiliation, and embarrassment, but also

caused Plaintiff/Appellant severe emotional distress, which affected

Plaintiff/Appellant both professionally and personally. Am. Compl. ¶ 20. In fact,

Defendant/Appellee's acts directly impacted Plaintiff/Appellant's business in the

legal profession. Specifically, Defendant/Appellee intentionally and unjustifiably

interfered with a contractual relationship between Plaintiff/Appellant and a

potential client by spreading per se defamatory statements about

Plaintiff/Appellant, damaging his reputation, and consequently, preventing

Plaintiff/Appellant from engaging in legal representation. Am. Compl. ¶ 29.

On June 10, 2014, the jury returned a verdict in favor of Plaintiff/Appellant

and against Defendant/Appellee Judicial Watch, finding Defendant/Appellee liable

for the statements made by Ruffley and awarding Plaintiff/Appellant damages

totaling $181,000, including $156,000.00 for compensatory damages and

$25,000.00 for punitive damages (the "Judicial Watch Judgment") (ECF No. 156).

The District Court entered judgment in that same amount (ECF No. 157) for

Plaintiff/Appellant and Defendant/Appellee Judicial Watch chose not to appeal the

judgment of the District Court.

Immediately after the judgment was awarded in favor of Plaintiff/Appellant,

Plaintiff/Appellant's former wife, Stephanie Ann Deluca ("Deluca," formerly

known as Stephanie Ann Luck), filed a creditor's bill against Plaintiff/Appellant in

the Cuyahoga County, Ohio, Court of Common Pleas, in an attempt to have the

Judicial Watch Judgment awarded to her in repayment for monies allegedly owed

to her. *See Luck v. Klayman*, Case No.: CV 14 828766. Defendant/Appellee

Judicial Watch was also named as a defendant in this action.

Instead of paying the judgment owed to Plaintiff/Appellant,

Defendant/Appellee Judicial Watch, wanting to be released of any responsibility,

on February 17, 2015, pursuant to Federal Rules of Civil Procedure ("FRCP") 67,

sought to deposit the entirety of the $181,000 Judicial Watch Judgment with the

District Court (ECF. No. 177). On February 18, 2015, the District Court granted

Defendant/Appellee's motion (ECF. No. 178) and on February 19, 2015, the Clerk

of the District Court entered a receipt for the funds that were deposited with the

Court.

On May 6, 2015, Plaintiff/Appellant filed a Renewed Motion For

Withdrawal Of A Deposit Pursuant To FRCP 67(b) (ECF No. 188). On May 8,

2015, the District Court ordered that the monies being held in the Court's registry

be returned to Defendant/Appellee instead of being given directly to

Plaintiff/Appellant (ECF No. 189). Plaintiff/Appellant filed his Notice of Appeal

on May 12, 2015 (ECF No. 190).

## ARGUMENT

On June 10, 2014, the District Court entered Final Judgment in favor of

Plaintiff/Appellant and against Defendant/Appellee in the total sum of $181,000

(ECF No. 157). On February 17, 2015, Defendant/Appellee Judicial Watch moved,

pursuant to Federal Rules of Civil Procedure ("FRCP") 67, to deposit that award

with the Court (ECF. No. 177). On February 18, 2015, this Court granted

Defendant/Appellee's motion (ECF. No. 178) and on February 19, 2015, the Clerk

entered a receipt for the funds that were deposited with the Court. For the

following reasons, Plaintiff/Appellant Larry Klayman moved for the withdrawal of

the funds pursuant to FRCP 67(b).

Rule 67 of the Federal Rules of Civil Procedure states in part:

> (a) Depositing Property. If any part of the relief sought is a money
> judgment or the disposition of a sum of money or some other
> deliverable thing, a party—on notice to every other party and by leave
> of court--may deposit with the court all or part of the money or thing,
> whether or not that party claims any of it. The depositing party must
> deliver to the clerk a copy of the order permitting deposit.
> (b) Investing and Withdrawing Funds. Money paid into court under
> this rule must be deposited and withdrawn in accordance with 28
> U.S.C. §§2041 and 2042 and any like statute. The money must be
> deposited in an interest-bearing account or invested in a court-
> approved, interest-bearing instrument.

Further, 28 U.S.C. § 2041 provides:

All moneys paid into any court of the United States, or received by the

6

officers thereof, in any case pending or adjudicated in such court, shall be forthwith deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of such court. This section shall not prevent the delivery of any such money to the rightful owners upon security, according to agreement of parties, under the direction of the court.

28 U.S.C. § 2041.

As grounds for their motion to deposit the funds with the District Court, Defendant/Appellee cited to the fact that "another party is claiming an interest in the Final Judgment. Specifically, Plaintiff/Appellant's former wife, Stephanie Luck, has filed a Creditor's Bill in the Court of Common Pleas, Cuyahoga County, Ohio." *See* Docket No. 177 at pp. 1. However, this should not prevent the release of funds to Plaintiff/Appellant.

Plaintiff/Appellant has always had the legal right to obtain the money awarded to him by the Judicial Watch judgment. Given the troubled past between the parties, Plaintiff/Appellant simply agreed to have the funds deposited with the District Court so that Defendant/Appellee could turn over the money while it was willing and able to do so. Now, Plaintiff/Appellant is seeking to withdraw the funds that belong to him. Defendant/Appellee no longer has an interest in the money and this lawsuit is now over. Quite simply, there is no need for the District Court to hold on to the funds. The dispute between the parties is now settled, and the pending appeal is now over. The District Court has similarly already awarded costs to Plaintiff/Appellant and these funds were correctly and directly sent to

7

Plaintiff/Appellant (Docket No. 185). The same should be true of the $181,000

judgment that is currently being held by the District Court.

The state and federal court systems are independent of each other. There is

no mechanism for a state to have control over funds held in federal court in another

state. In fact, based on the supremacy clause of the U.S. Constitution, federal laws

supersede and preempt any state laws that conflict. *See, e.g.*, *Edgar v. MITE Corp.*,

457 U.S. 624 (1982) ("A state statute is void to the extent that it actually conflicts

with a valid Federal statute."). The U.S. Supreme Court further found in *Crosby v.*

*National Foreign Trade Council*, 530 U.S. 363 (2000) that, even when a state law

is not in direct conflict with a federal law, the state law could still be found

unconstitutional under the Supremacy Clause if the "state law is an obstacle to the

accomplishment and execution of Congress's full purposes and objectives." *Id.* at

373.

Here, the sole laws and rules controlling the depositing and withdrawal of

money into the federal courts are FRCP Rule 67 and 28 U.S.C. § 2041. There is no

other law that prevents Plaintiff/Appellant's withdrawal of his money. In fact, 28

U.S.C. § 2041 makes clear, on its face, Congress' intent to "delivery of any such

money to the rightful owners." 28 U.S.C. § 2041. No other laws prevent the

withdrawal of Plaintiff/Appellant's money. If a state law did in any prevent

withdrawal of Plaintiff/Appellant's funds then it would conflict with federal law

8

and would be preempted.

Plaintiff/Appellant's ex-wife seeks to improperly appropriate for herself the proceeds of a judgment that was procured against Judicial Watch that severely damaged Plaintiff/Appellant. This judgment of Plaintiff/Appellant ex-spouse stems from long-standing litigation between the two with regard to the custody of their children in a lawsuit within the Domestic Relations Court for Cuyahoga County, Ohio. *See Klayman v. Luck,* No. DR 07 316840. This judgment is unenforceable because it was procured through fraud, plainly, and Plaintiff/Appellant has filed suit in federal court to have it ruled null and void, along with other relief. *See Klayman v. Deluca*, No. 15-cv-80310 (S.D.F.L.). For this reason, this judgment should not stand in the way of Plaintiff/Appellant being awarded the money that is due to him as a result of this lawsuit.

Further, should Plaintiff/Appellant's ex-wife wish to continue pursuing the money awarded him in this lawsuit then she can go after Plaintiff/Appellant for the money directly. There is no need for this Court to act as the arbitrator of these funds, especially since Plaintiff/Appellant's ex-wife is not a party to this litigation and the issue of the proper recipient of this money is not before this Court. For this Court to issue a determination of the proper recipient of this money would be in violation of the U.S. Constitution's prohibition of advisory opinions. *See, e.g. , Muskrat v. United States,* 219 U.S. 346 (1911) and abuse of its discretion. The

9

money belongs to Plaintiff/Appellant and should be disbursed to him as is required by law.

## **CONCLUSION**

For all of these reasons, this Court should respectfully review en banc this issue of law and order the lower court to allow Plaintiff/Appellant to withdraw the monies which he won through judgment before the lower court. The lower court has no authority to return the money to Judicial Watch, as it no longer belongs to Judicial Watch.

June 17, 2016

Respectfully submitted,

/s/ *Larry Klayman*
LARRY KLAYMAN
7050 W Palmetto Park Rd.
Suite 15-287
Boca Raton, FL 33433
(310) 595-0800
leklayman@gmail.com

*Appellant Pro Se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of June, 2016, I filed a true and

correct copy of foregoing appellate brief with the Clerk of the United States Court

of Appeals for the Eleventh Circuit via CM/ECF. I further certify that the

following were also served via CM/ECF:


**Douglas James Kress**
Schwed Kahle & Jenks, P.A.
11410 North Jog Road
Suite 100
Palm Beach Gardens, FL 33418
561-694-0070
Fax: 561-694-0057
Email: dkress@schwedpa.com

                    Respectfully submitted,

                    /s/ Larry Klayman
                    FL Bar No. 246220
                    7050 W Palmetto Park Rd.
                    Suite 15-287
                    Boca Raton, FL 33433
                    (310) 595-0800
                    leklayman@gmail.com
                    *Appellant Pro Se*